UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-cv-24391-MGC

BADIA SPICES, INC.,
a Florida corporation,

    Plaintiff/Counter-Defendant,

v.

GEL SPICE COMPANY, INC.,
a New Jersey corporation,

    Defendant/Counter-Plaintiff.
_____/

### BADIA'S MOTION FOR ENTRY OF PERMANENT INJUNCTION

    Plaintiff, Badia Spices, Inc. ("Badia"), by and through undersigned counsel, hereby moves for the entry of a permanent injunction against Defendant, Gel Spice Company, Inc. ("Defendant") in the form of the attached proposed Permanent Injunction attached as Exhibit A.  Badia requests the narrowly tailored proposed Permanent Injunction consistent with the jury's findings of willful trademark infringement and unfair competition under federal and Florida law.  In support of this Motion, Badia relies on and incorporates the testimony of record and all admitted trial exhibits, and states as follows:

**I.     INTRODUCTION.**

    After a week-long trial, the jury found that Badia's strong "SAZON COMPLETA®" and "COMPLETE SEASONING®" trademarks were willfully infringed by Defendant.  *See* [DE 184].  Specifically, the jury returned a verdict in favor of Badia and against Defendant on all counts of Badia's Complaint, namely, trademark infringement under federal and Florida law and unfair competition under federal and Florida law, on Defendant's counterclaims and affirmative defenses, and awarded Badia the profits of Defendant and punitive damages for a total of $564,000.  *See id*.

    "In ordinary trademark infringement actions… complete injunctions against the infringing party are the order of the day.  The reason is simple: the public deserves not to be led astray by the use of inevitably confusing mark…." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc*., 522 F.3d 1200, 1209 (11th Cir. 2008) (citation omitted).  The leading trademark treatise recognizes that "[a]

permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:1 (5th ed.) (2018). If an injunction is not granted, "the result would be a judicially imposed compulsory license given to an infringer" to "continue its infringing activities." *Id*.

Pursuant to longstanding precedent and current law, Badia requests the entry of a permanent injunction to stop Defendant's continuing use of the infringing "SAZON COMPLETE MIX SEASONING" mark (the "Infringing Mark") on its competing spice blends. Despite the jury verdict, Defendant continues to infringe Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks. *See, e.g.*, Declaration of Frank Diaz, Exhibit B.

## II.   BACKGROUND.

The jury returned a verdict in favor of Badia finding that Defendant's willful conduct constituted trademark infringement and unfair competition under federal and Florida law. *See* [DE 184]. At trial, Badia proved, first, that its "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks are valid and, second, that Defendant's use of the Infringing Mark is likely to cause confusion. *See* 15 U.S.C § 1114(1)(a); *Planetary Motion, Inc. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001); *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).

As to validity, the evidence irrefutably showed that Badia's marks are strong and that it owns incontestable federal registrations for its "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks, namely U.S. Registration Nos. 2,896,679 and 2,885,777. [DE 82 at 3-4 Uncontested Facts No. 8 and 9; P-25; P-26]. As such, the validity of the marks was conclusively presumed. *See Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 196, 105 S. Ct. 658 (1985); *Dieter*, 880 F.2d at 326 (finding validity of an incontestable mark is "conclusively presumed."). The jury also made the explicit findings that Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks are not generic. [DE 184].

To determine whether a likelihood of confusion exists, courts in the Eleventh Circuit consider the following seven factors: (1) type of mark; (2) similarity of the parties' marks; (3) similarity of the parties' products; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising methods; (6) defendant's intent; and (7) actual confusion. *See Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). At trial, the jury considered these factors, and based on the evidence, including but not limited to the evidence

identified below, found that Defendant committed willful trademark infringement and unfair competition. While already presented in full detail before the Court and jury, some of the evidence bears repeating.

### FACTOR 1: Type of Mark

The evidence at trial overwhelmingly showed that Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks are strong due to Badia's: (1) incontestable trademark registrations [DE 82 at 3, Stipulated Fact No. 5]; Plaintiff's Exhibits P-25 and P-26; (2) longtime and widespread use of the marks [DE 173 at 6:19-24]; Plaintiff's Exhibits P-1, P-11; (3) significant advertising expenditures and range of promotions and advertising [DE 175 at 15:25, 16:1-9, 15-18, 63:4-7, 64:3-25, 65:1-25, 66:1-25, 67:1-18]; Plaintiff's Exhibits P-10, P-12, P-20, P-21, P-28, P-30; (4) large volume of sales [DE 175 at 19:21]; Plaintiff's Exhibit P-22; and (5) successful enforcement efforts against competitors in the spice industry [DE 173 at 48:11-25, 49:1-25, 50:1-10]; Plaintiff's Exhibits P-16, P-17, P-18, P-19. *See, e.g., Edge Sys. Ltd. Liab. Co. v. Aguila*, 186 F. Supp. 3d 1330, 1349 (S.D. Fla. 2016) (finding longtime use, significant advertising expenditures, and large volume of sales reinforce the strength of the marks in addition to the incontestable trademark registrations); *see also Frehling Enters.*, 192 F.3d at 1336 ("[T]he district court failed to consider the fact that [the plaintiff's] mark is incontestable and therefore constitutes a 'relatively strong mark.'").

"[T]he rationale is that the more well-known the mark, the deeper is the impression it creates upon the public's consciousness and the greater the scope of protection to which it is entitled." *Turner Greenberg Assocs. v. C & C Imps., Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) (citing *Freedom Savings & Loan Assn v. Way*, 757 F.2d 1176, 1182 (11th Cir. 1985)). Further, the lack of current third-party use indicates that the marks' strength is enhanced, as it is more distinctive; therefore, the marks are more easily recognized by customers. *See Frehling*, 192 F.3d at 1336; *see also Hershey Co. v. Promotion in Motion, Inc.*, Civil Action No. 07-cv-1601, 2010 U.S. Dist. LEXIS 152868, at *9, 37-38 (D.N.J. Oct. 4, 2010) (finding successful enforcement efforts is evidence that a mark is strong).

### FACTOR 2: Similarity of Marks

The evidence at trial also established the similarity of the parties' marks. Defendant's Infringing Mark, "SAZON COMPLETE MIX SEASONING," incorporates both Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks essentially in their entireties

and creates an overall striking similar impression in sight, sound, and meaning. Indeed, Defendant's CFO, Samson Baum, conceded that the marks are similar [DE 178 at 7:14-23]. Trademark infringement does not require that two marks be identical, only that they be similar in their "overall impressions." *Frehling*, 192 F.3d at 1337.

### FACTOR 3: Similarity of Products & FACTOR 4: Similarity of Retail Outlets (Trade Channels and Customers)

Defendant had no choice but to concede that the parties' products and trade channels/customers are similar. [DE 82 at 3; DE 172 at 6:10-19, 20:22-25, 21:1; P-31]. Defendant's products sold under the Infringing Mark are sold in similar retail outlets with similar customer bases [DE 82 at 3, Stipulated Law No. 4] and at times, are sold side-by-side for (1) nearly half the price and (2) at a lower quality. *See* Plaintiff's Exhibit 31; [DE 173 at 52:1-7; DE 175 at 4-9]. Eleventh Circuit precedent recognizes that "[t]he greater the similarity between the products and services, the greater the likelihood of confusion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983); *see Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1332; *see also* Jury Instructions [DE 188 at 17] ("Similarities [of the Parties' Sales Channels, Distribution, and Customers] increase the possibility of consumer confusion, mistake, or deception.").

### FACTOR 5: Similarity of Advertising Methods

The evidence at trial also established overlap and similarity in the parties' advertising methods. The parties both advertise in point-of-sale displays in stores [DE 172 at 36:19-23, 37:2-4, 52:10-17]; Plaintiff's Exhibits P-61, P-10, P-21, which are effective methods of advertising these types of products [DE 173 at 45:18-19]. The parties also advertise using ends caps in stores [DE 173 at 44:14-19, 45:7-9; DE 172 at 53:18-24]; Plaintiff's Exhibit P-10; through flyers [DE 172 at 22:5-21]; [DE 82 at 4, Stipulated Fact No. 10]; Plaintiff's Exhibit P-45, and promotions to attract customers [DE 82 at 4, Stipulated Fact No. 10]; Plaintiff's Exhibit P-61. "The greater the similarity in advertising campaigns the greater the likelihood of confusion." *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1332 (internal citations omitted).

### FACTOR 6: Intent

Based on the overwhelming evidence, the jury expressly found that Defendant's actions were willful. [DE 184]. Badia's former distributor, Mr. Rincon, requested a product called "Sazon" to compete in the Hispanic market. [DE 172 at 54:8-10]. During the development phase of such product, variations of different marks were considered, but repeatedly, Defendant would internally

4

refer to the product as their own "Complete Seasoning" product. *See, e.g.*, [DE 162 15:24-25, 16:1-17]; Plaintiff's Exhibits P-63 and P-75; Defendant's Exhibit D-1.

When Defendant adopted the Infringing Mark, it knew that "SAZON COMPLETA®" and "COMPLETE SEASONING®" were Badia's registered trademarks. *See* [DE 172 at 14:13-22]. Defendant was also concerned about the use of the word "complete" as an infringement of Badia's registered marks. [DE 172 at 14:23-25, 15:1]. Nonetheless, Defendant ignored the potential for infringement and adopted and used the Infringing Mark, and represented to customers the product as "Sazon Complete." [DE 172 at 26:4-9]; Plaintiff's Exhibit P-81; [DE 172 at 23:2-10]; Plaintiff's Exhibit P-45; *see also* Jury Instructions [DE 188 at 18] ("If you determine that Defendant intentionally ignored the potential for infringement, you may impute to Defendant an intent to infringe.").

Moreover, Defendant substantially copied the "romance statement" that is found on the label of Badia's product. Identical wording such as "ingredients and spices… enhance the natural flavor of your…food" and "all kinds of meat, poultry, and [fish/seafood]…sprinkle…on [some foods]," are not coincidental. *Compare* Plaintiff's Exhibits P-32 (Badia's bottles) *with* P-33 (Defendant's bottles) and Defendant's Exhibit D-99 (Defendant's bottles). Defendant's actions were done in bad faith and were all part of scheme to trade off of Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks, that have been built for the over 50 years.

Lastly, Defendant continued to use the Infringing Mark after it received a cease-and-desist letter from Badia [Plaintiff's Exhibit P-82] objecting, and such use continued until trial and is continuing to the present. *See, e.g.,* Exhibit B (showing current infringing activity).

### FACTOR 7: Actual Confusion

The jury considered the lack of evidence of actual confusion, which the evidence showed was unlikely to be reported for spice products, and still found that Defendant committed willful trademark infringement and unfair competition. This is consistent with the law "[b]ecause the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement." [DE 188 at 18]. Importantly, "[b]ecause direct evidence of actual confusion may be elusive in instances where the products are inexpensive, impulse purchases, an aggrieved trademark holder has a low threshold to meet." *Delta Air Lines, Inc. v. Wunder*, No. 1:13-CV-3388-MHC, 2015 U.S. Dist. LEXIS 189745, at *33 (N.D. Ga. Dec. 28, 2015) (citing *Churchill Downs, Inc. v. Commemorative Derby Promotions, Inc.*, No. 1:12-cv-

5

0517-JEC, 2013 U.S. Dist. LEXIS 135350, at *31-32 (N.D. Ga. Sep. 23, 2013) and *Angel Flight*, 522 F.3d at 1206). This is especially true where the junior user's business has only been operating for a short time and the product has had only limited exposure. *See Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991).

### III. ARGUMENT.

#### A. Legal Standard

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). The Supreme Court held that the prevailing trademark owner in an infringement action is "entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [infringer], which has shown by its conduct that it cannot be trusted." *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924); *see also Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) ("[W]here unfair competition is established any doubts as to the adequacy of the relief are generally resolved against the transgressor."). Under the Lanham Act, a district court is authorized to issue an injunction to prevent a violation of any rights of the registrant of a mark. *See* 15 U.S.C. § 1116(a).

To obtain an injunction, a party must demonstrate that: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight*, 522 F.3d at 1208 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006) (injunctive relief is within the equitable discretion of district courts that "must be exercised consistent with traditional principles of equity…." *Id.* at 394). The Court has broad equity powers to issue a permanent injunction necessary to stop a defendant's infringing activities. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 28 L. Ed. 2d 554 (1971); *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016).

### B. Following the Jury Verdict Finding Willful Trademark Infringement and Unfair Competition, Injunctive Relief Against Defendant is Warranted and Appropriate

Following the jury verdict finding willful trademark infringement and unfair competition, Badia is entitled to a permanent injunction because it suffered and will continue to suffer irreparable injury; there are no other remedies available at law; the balance of hardship favors Badia; and a permanent injunction serves the public interest, as set forth in further detail below. *See, e.g., TracFone Wireless, Inc. v. Clear Choice Connections, Inc.* where the court. No. 13-CV-23066, 2016 U.S. Dist. LEXIS 179708 (S.D. Fla. Mar. 31, 2016) (entering permanent injunction after a jury rendered a verdict finding willful trademark infringement and unfair competition).

#### 1. Badia is Suffering Irreparable Harm as a Result of Defendant's Willful Actions

Badia is suffering irreparable harm, which is supported by the jury's finding of willful trademark infringement and unfair competition. "The Eleventh Circuit subscribes to the rule that infringement of a trademark is, by its very nature, an activity which causes irreparable harm." *Sream, Inc. v. Barakat Food, Inc.*, No. 16-24722-CV-MGC/EGT, 2017 U.S. Dist. LEXIS 165420, at *7 (S.D. Fla. Oct. 4, 2017) (Cooke, J. adopted in [DE 25] on October 31, 2017) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008)).[1] The Eleventh Circuit has held that a sufficiently strong showing of likelihood of confusion caused by trademark infringement may itself constitute a showing of a substantial threat of irreparable harm. *See Boulan S. Beach Master Ass'n v. Think Props., LLC*, 617 F. App'x 931, 934 (11th Cir. 2015) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)). "This is so because a

---

[1] The Supreme Court in *eBay* held that "a categorical grant" of injunction relief in a patent infringement case following a finding of infringement was not appropriate. 547 U.S. at 391. Instead, whether or not to grant injunctive relief is "within the equitable discretion of district courts that must be exercised consistent with traditional principles of equity…." *Id*. at 394. The Eleventh Circuit has expressly declined to decide whether *eBay* displaces the presumption of irreparable harm once infringement has been established. *See Axiom*, 522 F.3d at 1228; *see also PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1286 (M.D. Fla. 2015) ("This Circuit has expressly declined to decide whether the Supreme Court's decision in *eBay* displaces the presumption of irreparable harm once infringement has been established."). Indeed, following *eBay*, courts in the Eleventh Circuit have continued to apply the presumption of irreparable harm once trademark infringement has been established. *See also Herb Reed Enters., LLC v. World Famous Platters Rd. Shows I LLC*, No. 8:14-cv-56-T-17AEP, 2014 U.S. Dist. LEXIS 22046, at *13 (M.D. Fla. Feb. 7, 2014) ("[T]he Eleventh Circuit expressly declined to pass on the question [of presumption of irreparably injury], leaving its prior precedent intact.").

remedy at law for consumer confusion or reputational damage is ordinarily inadequate, given the potential difficulty of proof of plaintiff's damages and the impairment of intangible values." *Boulan S. Beach Master Ass'n.*, 617 F. App'x at 934 (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)). In line with this reasoning, "[i]n [*Axiom*], the court referenced its earlier decision in *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989), in which it stated, 'it is generally recognized in trademark infringement cases that (1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm.'" *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1287 (S.D. Fla. 2010), adopted by *Tiramisu Int'l LLC v. Clever Imps. LLC*, 2010 U.S. Dist. LEXIS 80975 (S.D. Fla., Aug. 10, 2010). Indeed, the leading trademark treatise recognizes that "[t]rademark infringement damages a business' goodwill and reputation." MCCARTHY, § 30:1.

Courts in the Eleventh Circuit overwhelmingly hold that if likelihood of confusion is established, irreparable harm follows, whether the presumption is applied or not. *See Sream*, 2017 U.S. Dist. LEXIS 165420, at *7-8 (Cooke, J. adopted in [DE 25]); *Edmonson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV-LENARD/GOODMAN, 2017 U.S. Dist. LEXIS 219419, at *41-43 (S.D. Fla. July 28, 2017); *Holding Co. of the Vills. v. Vills. Roofing & Constr., Inc.*, No. 5:16-cv-348-OC-30PRL, 2017 U.S. Dist. LEXIS 57040, at *12 (M.D. Fla. Apr. 13, 2017); *TracFone Wireless*, 2016 U.S. Dist. LEXIS 179708, at *2-5; *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1332 (S.D. Fla. 2013); *Axiom Worldwide, Inc. v. HTRD Grp. H.K. Ltd.*, No. 8:11-cv-1468-T-33TBM, 2013 U.S. Dist. LEXIS 77650, at *76-77 (M.D. Fla. June 1, 2013); *Hosp. Int'l, Inc. v. Sitaram, Inc.*, No. 3:12-cv-1145-J-UAMHMCR, 2013 U.S. Dist. LEXIS 179697, at *13-16 (M.D. Fla. Aug. 26, 2013); *Tiramisu Int'l*, 741 F. Supp. 2d at 1286-87.

In this case, regardless of whether a presumption of irreparable harm is afforded to Badia based on the jury's finding of willful trademark infringement and unfair competition, Badia has suffered and will continue to suffer irreparable injury. If Defendant is not permanently enjoined, Badia will continue to suffer loss of control of reputation and loss of goodwill. The Eleventh Circuit is clear, and district courts continuously find, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3rd Cir. 1998)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

240 F.3d 832, 841 (9th Cir. 2001); *Sream, Inc. v. Barakat Food, Inc.*, No. 16-24722-CV-MGC/EGT, 2017 U.S. Dist. LEXIS 165420, at *7-8 (S.D. Fla. Oct. 4, 2017), adopted by Judge Cooke [DE 25] on October 31, 2017; *Fuzion Vapor, LLC v. Fumizer, LLC*, No. 3:16-CV-942-J-34PDB, 2017 U.S. Dist. LEXIS 139841, at *30 (M.D. Fla. July 28, 2017); *Herb Reed Enters.*, 2014 U.S. Dist. LEXIS 22046, at *13-14; *Adidas AG v. Adidascrazylight2.com*, No. 13-21230-CIV-ALTONAGA, 2013 U.S. Dist. LEXIS 53833, at *19 (S.D. Fla. Apr. 15, 2013).

Specifically, the Eleventh Court has recognized the irreparable harm resulting from trademark infringement:

> "[t]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another."

*Barrow*, 143 F. App'x at 190-191 (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)). In addition, "[i]t is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Id*. at 191; *accord Citizens Financial Group, Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 131 (3d Cir. 2004) ("A finding of infringement or the likelihood of confusion with the concurrent use of the infringed trademark implicitly signifies a loss of expectation and goodwill as well.").

Here, Badia is unable to control the nature and quality of Defendant's products sold under the Infringing Mark. Therefore, Badia has suffered and continues to suffer the "most corrosive and irreparable harm attributable to trademark infringement." *Barrow*, 143 F. App'x at 190-191. As addressed above, the reputation and goodwill built by Badia for nearly five decades is seriously undercut by Defendant's unauthorized use of the. *See, e.g.*, *TracFone Wireless*, 2016 U.S. Dist. LEXIS 179708, at *3-5 (finding irreparable harm where the plaintiff owned federal trademark registrations for the marks at issue and developed goodwill among the consuming public through advertising expenditures, branding initiatives, and sales over a period of several years in addition to the jury finding willful trademark infringement); *Internetshopsinc.com v. Six C Consulting, Inc.*, No. 1:09-CV-00698-JEC, 2011 U.S. Dist. LEXIS 31222, at *17 (N.D. Ga. Mar. 24, 2011) ("Defendant's unauthorized use of the 'Dura Pro' mark for over a year inevitably diluted the goodwill that plaintiff established in connection with the mark."). Despite nearly fifty years of carefully crafting and fine-tuning the formula of its signature product, Defendant's willful

infringement irreparably damages Badia's reputation of higher quality goods. *See* [DE 173 at 11:12-15, 21-23, 25:13-25]; [DE 175 at 51:4-9, 21-25, 52:1-4].

Finally, to the present day, Defendant's unlawful actions have continued uncontrollably while Badia irreparably suffers. In fact, even after the jury verdict, Defendant has refused to stop infringing Badia's "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks by continuing to sell its competing product using the Infringing Mark via online retailers and in grocery stores, further compelling a finding of irreparable harm and need for permanent injunction. *See* Exhibit B; [DE 187 at 45:21-24]; [DE 189 at 24:8-15].

2. <u>No Other Remedies are Available At Law, Let Alone Adequate Remedies</u>

Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement. *Burger King*, 911 F. Supp. at 1509-10. "There is not adequate remedy at law to redress infringement." *Tally-Ho*, 889 F.2d at 1029.

Defendant's unauthorized use of the Infringing Mark inhibits Badia's ability to control its good reputation and goodwill. An award of money damages will not cure injury to Badia's reputation and goodwill if Defendant's infringing actions are allowed to continue. *See Boulan S. Beach Master Ass'n.*, 617 F. App'x at 934; *Chanel*, 240 F. Supp. 3d at 1290; *Herb Reed Enters.*, 2014 U.S. Dist. LEXIS 22046, at *14.

The jury awarded Badia the profits of Defendant under the basis that Defendant's conduct was willful and deliberate, Defendant was unjustly enriched, or the award was necessary to deter future conduct. *See* [DE 184]. The jury also awarded punitive damages. *See id*. While this shows that the jury determined Defendant's profits to be ill-gotten gains, owing to the likelihood of consumer confusion at the heart of the claims, this award is not an adequate remedy, as no adequate remedies are available at law to redress trademark infringement. *See Tally-Ho*, 889 F.2d at 1029. Moreover, such award does not address the ongoing harm to Badia's marks that are occurring while Defendant's infringement continues. Given Defendant's willful actions and that the infringement is continuing to date, the infringement will continue without a permanent injunction to enjoin it. *See, e.g.,* Exhibit A. As Professor McCarthy observes:

> if the court were to hold that damages were sufficient and deny injunction, "the court would be telling plaintiff to sit by and watch defendant continue to violate the law, infringe upon plaintiff's proven rights and continue to confuse and deceive customers until such time as plaintiff decided to sue again for money damages as

compensation for the past injury incurred. That would not be anything close to an 'adequate' remedy."

MCCARTHY, § 30:2. "Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation." *Id*. at § 30:1.

Moreover, even if the jury awarded Badia actual damages, any effect on Badia's sales from Defendant's actions does not address the ongoing harm to Badia's marks that will occur if Defendant's infringement is permitted to continue. *See, e.g., Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (injuries arising from trademark infringement are presumed to be irreparable even without a business loss, because grounds for irreparable harm include "loss of control of reputation, loss of trade, and loss of goodwill"); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2002) ("it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill"); *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (explaining that the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality" of goods sold by the defendant); *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009) ("damage to goodwill and brand name is not easily quantified"; granting permanent injunction in trademark case).

Accordingly, because there are no other remedies available, let alone adequate remedies, injunctive relief is warranted.

       3.    <u>Injury to Badia Without an Injunction Outweighs Any Alleged Harm an Injunction May Cause Defendant</u>

It has been clearly established that Defendant has no right to use the Infringing Mark in connection with its spice blend products. *See* [DE 184]. Defendant, a highly profitable company, has the means to comply with injunctive relief by simply changing the label of its spice blend product, which comprises less than one percent of Defendant's total sales. *See* [DE 178 at 6:5-25]. Therefore, Defendant "could suffer no legitimate hardship by being forward to stop that which [it has] no right to do." *Tiramisu Int'l*, 741 F. Supp. 2d at 1288; *see It's a 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1332 (S.D. Fla. 2013); *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1316-17 (N.D. Ga. 2017).

Moreover, Defendant cannot complain to the Court if it is forced to face the consequences of its actions because it knowingly ignored the risk of infringement and chose to adopt and use the Infringing Mark. In addition to Defendant being well aware of Badia's well-known "SAZON

11

COMPLETA®" and "COMPLETE SEASONING®" marks before it adopted the Infringing Mark, [DE 172 at 14:13-17], being formally notified that Badia expressly objected to the use of its Infringing Mark prior to litigation, *see* Plaintiff's Exhibit P-82, and after over two years of litigation, Defendant has continued to use the Infringing Mark at its own risk. Therefore, Defendant must now face the consequences of an injunction. *See Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1547 (11th Cir. 1984) (invalidating affirmative defense because defendant expanded use of mark "in the face of plaintiff's constant complaints"); *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151-52 (5th Cir. 1985) ("Conans received CPI's cease and desist letter prior to opening the San Antonio restaurant. Conans therefore opened that restaurant at its own peril."); *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) (self-inflicted harm to infringer resulting from name change is far outweighed by the immeasurable damage done to plaintiff by the infringement).

In contrast, the continuing harm causes hardship to Badia because its "SAZON COMPLETA®" and "COMPLETE SEASONING®" marks are used on Badia's signature products [DE 173 at 9:4-5; 10:2-11; 18:14-17; 22:7-13; 37:7-8]. Badia has spent substantial time (close to fifty years) and money developing the quality and reputation of its marks, which will continue to suffer substantial harm if a permanent injunction is not granted. *See* Plaintiff's Exhibits P-1, P-10, P-11, P-12, P-16, P-17, P-18, P-19, P-20, P-21, P-22, P-26, P-28, P-30, P-82; [DE 173 at 6:19-24]; [DE 175 at 12:12-16, 15:25, 16:1-9, 19:21, 44:21-22, 64:3-25, 65:1-25, 66:1-25, 67:1-18, 22-25, 68:1-12]. For these reasons, if injunctive relief is not grated, injury to Badia outweighs any alleged harm an injunction may cause Defendant.

### 4. The Proposed Permanent Injunction Serves the Public Interest

A permanent injunction would serve the public interest because it would preclude the likelihood of consumer confusion. *See, e.g.*, *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace."); *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1564 (11th Cir. 1991) ("[T]he public interest in preventing confusion around the marketplace is paramount…."); *Tiramisu Int'l*, 741 F. Supp. 2d at 1288 ("Because the use of the [] mark on a product not manufactured by [the plaintiff] may well lead to confusion in the marketplace, the public interest is best served by [the defendant] being prevented from using the mark."). "[C]onsumer confusion is by its very nature against the public interest." *Teledyne Indus., Inc. v.*

*Windmere Prods., Inc.*, 433 F. Supp. 710, 740 (S.D. Fla. 1977). The heart of the jury's determination in this case was that there was the intentional creation of likelihood of confusion. *See* [DE 184]. Protecting consumers from the likelihood of confusion and upholding federal and state laws balances this factor in favor of granting the permanent injunction.

## IV.    CONCLUSION.

"In short, there is no reasonable basis for defendant to resist an injunction preventing it from engaging in admittedly unlawful conduct." *Internetshopsinc.com*, 2011 U.S. Dist. LEXIS 31222, at *18. Balancing the four factors cited above and following the jury's verdict of willful trademark infringement and unfair competition, Badia respectfully requests that this Court enter a permanent injunction as set forth in the proposed Permanent Injunction attached as Exhibit A and such further relief the Court deems just and proper.

Date: November 21, 2018

Respectfully submitted,

s/ Jessica Neer McDonald
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Oliver Alan Ruiz
Florida Bar No. 524,786
oruiz@malloylaw.com
Meredith Frank Mendez
Florida Bar No. 502,235
mmendez@malloylaw.com
W. John Eagan
Florida Bar No. 105,101
johneagan@malloylaw.com
Jessica Neer McDonald
Florida Bar No. 125,559
jnmcdonald@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
Facsimile (305) 858-0008

*Counsel for Plaintiff, Badia Spices, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 21, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on this Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

                                                                               s/ Jessica Neer McDonald

## SERVICE LIST

MARK STEIN LAW
Mark E. Stein
2999 N.E. 191st Street, Suite 330
Aventura, Florida 33180
Tel.: (305) 356-7550
Fax: (786) 664-6787
mark@markstein.com

MANDELBAUM SALSBURG P.C.
Ronald D. Coleman (*Pro Hac Vice Admission*)
Joel G. MacMull (*Pro Hac Vice Admission*)
3 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 295-3652
Fax: (973) 325-7467
rcoleman@lawfirm.ms
joelmacmull@lawfirm.ms

*Counsel for Defendant, Gel Spice Company, Inc.*